**UNITED STATES of America, Plaintiff,**

v.

**ONE 1955 MODEL FORD 2 DOOR VICTORIA AUTOMOBILE, Motor Number U5AW-137562, and a Quantity of Miscellaneous Mechanics Tools, Defendant.**

**Civ. No. 780.**

United States District Court E. D. North Carolina, Wilmington Division.

Dec. 16, 1957.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for plaintiff.

Wessell & Crossley, Wilmington, N. C., for intervening petitioner.

GILLIAM, District Judge.

In this action the intervening petitioner seeks the remission to the extent of its interest of the forfeiture of an automobile found in violation of the Internal Revenue Laws relating to liquors. The facts of the case appear as follows:

■ Quentin Brewington purchased the automobile in question from Clark Motor Company on July 29, 1955, and at that time gave a note and chattel mortgage on the automobile to Clark Motor Company. Clark Motor Company placed the note and chattel mortgage in the mail to the petitioner, Security National Bank, which received it on August 2, 1955. Upon receipt of the note and chattel mortgage, the Bank remitted an advance to Clark Motor Company and at the same time wrote letters to the various law enforcement agencies requesting information as to whether or not the said Quentin Brewington had any liquor violation record or reputation as well as making the usual credit and reputation check. On or about August 11, 1955, and in response to its inquiry directed to C. S. Nicholson, head of the Alcohol Tax and Tobacco Division for North Carolina in Charlotte, North Carolina, the Bank received Mr. Nicholson's reply, stating: "No record or reputation within this office as a liquor law violator as of August 10, 1955." Upon the evidence presented, the Court finds that in fact Brewington did have a record or reputation locally for violating the State and Federal liquor laws at the time of the events herein described, and further finds that at the time referred to in the Libel of Information, the 1955 Model Ford, above described, was being used by Quentin Brewington, registered owner, in violation of the Internal Revenue Laws. Subsequent to the receipt of Mr. Nicholson's letter, but prior to Brewington's instant violation of the Internal Revenue Laws, the Bank purchased the note and mortgage in the manner set forth below.

Prior to and during the events described above, the Bank had a long standing written agreement with Clark Motor Company to the effect that no sale of an automobile purchaser's note and mortgage was to become final until the expiration of a period of twenty days. This period of time was established to enable the Bank to determine the quality of the paper in connection with its decision as to whether or not to purchase the same. In the event that the Bank refused to purchase a particular note, any advance to the dealer upon receipt of the note by the Bank was returned to the Bank. At no time was the Bank under any legal compulsion to forward an advance to the dealer upon the receipt of a purchaser's note. The practice of forwarding an advance at once is the outgrowth of automobile dealers' system of financing. Frequently the dealer, upon the sale of a car, needs immediate funds to release the car from its position as security under a floor-planning scheme, or to refurnish the dealer's inventory.

The conditions precedent to remission or mitigation of forfeiture under the liquor laws are set forth in 18 U.S.C.A. § 3617(b). Briefly, these conditions, as applied to the present case, are that, (1) the petitioner have an interest in the automobile acquired in good faith; (2) that the petitioner have no knowledge or reason to believe that the automobile would be used in the violation of Federal or State liquor laws; and (3) that the petitioner, prior to acquiring its interest, be informed in answer to its inquiry at the headquarters of the principal local or federal law enforcement officer of (A) the locality in which the automobile purchaser bought the car, (B) the locality in which the automobile purchaser resided, and (C) each locality in which credit inquiry is made, that the automobile purchaser had no record or reputation for violating State or Federal liquor laws. It is conceded that the interest of the petitioner was acquired in good faith and that it had no knowl-

edge or reason to believe that the libelled vehicle would be used in violation of either Federal or State liquor laws.

■ Apparently it is conceded in the present case that a negative reply as to record and reputation was received from the proper law enforcement official in each locality in which credit inquiry was made. As to inquiry and reply in the other localities required by statute, it is the opinion of the Court that where the petitioner for remission or mitigation of forfeiture makes inquiry concerning reputation of the purchaser of the automobile at the State office of Federal Alcohol and Tobacco Unit which covers the entire State, the requirement of inquiry of one of the officers named in 18 U.S.C.A. § 3617(b) at both the place of the transaction and the residence of the purchaser is met. Murdock Acceptance Corp. v. United States, 350 U.S. 488, 76 S.Ct. 536, 100 L.Ed. 580. Therefore, the petitioner in the present case has fulfilled the conditions precedent to remission of forfeiture provided the information in response to the petitioner's inquiry was received prior to the time the petitioner acquired its interest.

■ The instant transaction between the Bank and the automobile dealer, Clark Motor Company, appears to have been a sale on approval. The note and mortgage involved were submitted to the Bank for purchase, and the Bank had twenty days in which to determine the quality of the paper before deciding to accept or reject the offer for the sale of the note. Because of the character of the continuous transactions between the dealer and the Bank, acceptance was to be signified by silence—a failure on the part of the Bank to manifest a rejection of the submitted offer within the agreed twenty days.

■ With regard to sale on approval, the following statement appears in Williston on Contracts, Abridged Edition, Section 722: "The approval of the buyer may be a condition precedent to the transfer of title * * * it makes little difference what language the parties used since it is their manifestation of intention, evidenced by the whole contract, which determines their rights." It seems clear that the law of North Carolina recognizes a sale on approval, and when by the contract between the vendor and vendee the goods are to be examined or inspected, or, in other words, approved by the vendee, title does not vest in the vendee until such approval is manifested. Elliott v. Southern Railroad Co., 155 N.C. 235, 71 S.E. 339; Glascock v. Hazell, 109 N.C. 145, 13 S.E. 789; Devane v. Fennell, 24 N.C. 36. It is, therefore, clear that until the Bank approved the instant note and mortgage (by failing to reject the same within twenty days), no title passed and no interest in the car was acquired by the Bank.

But the Government contends that, although legal title did not pass until approval was manifested by the vendee, the petitioner in the instant case acquired an interest in the note and mortgage (and hence the car), through a legal option to buy or otherwise, when the petitioner, upon the receipt of the note and mortgage, remitted an advance to the dealer. It appears to the Court that this argument is without merit under the following reasoning.

■■ The advance by the Bank was not made in consideration of the dealer's giving up his right to withdraw his offer to sell the note; hence it cannot be said that upon payment of the advance the Bank acquired an interest in the automobile termed in law as an option to purchase. Prior to approval by the Bank, the dealer could withdraw his offer to sell the note, and this is true whether or not any advance was made at the time the note was submitted to the Bank. Until approval of the note and the consequent acceptance of the offer to sell the same, neither the dealer nor the Bank was under any enforceable obligation with regard to the note and mortgage in question. That the dealer would have had to return the advance if the Bank rejected the note stems from the fact that until the Bank approved and accepted the note, no consideration had

been given by the dealer for the advance. In other words, the dealer's obligation to return the advance and the Bank's right to the same upon the latter's failure to accept the note stems from the *complete absence* of a transfer of any interest in the note and mortgage as consideration for the advance; it is predicated on the fact that *no* contractual relationship has become binding upon the parties. Until approval of the note and mortgage the Bank had no interest in the same, but only an interest in the advance to the dealer which existed because until that time nothing had been transferred in consideration for the same to the Bank.

The following comment appears in 46 American Jurisprudence, Sec. 493, headed Passing of Title: "Contracts for sale on trial or approval are construed to mean that title shall continue in the seller until the sale has become absolute either by the buyer's approval of the goods or by his failing to comply with the express or implied conditions of the contract as to giving notice of dissatisfaction or as to returning the goods—title does not vest in the buyer under a sale on approval before he exercises his option to accept the goods merely because he paid the purchase price upon receiving the property. In the case of sale and approval, the title remains in the seller even as against bona fide purchasers for value from the buyer." It seems hardly necessary to say that the word "option" in the above quotation does not mean the vendee's right to have an offer submitted or remain open to him, but rather his right to accept or reject an offer which has been submitted to him without consideration extended for the same. It in no way implies that the advance of the purchase price is the consideration for a legal option not theretofore possessed by the vendee.

■■ In view of the above, it is the opinion of the Court that the petitioner acquired its interest in the instant automobile on August 22, 1955; approval of the note and mortgage and acceptance of the offer for the sale of the same being manifested on that date by the Bank's failure to return the same to the dealer prior to that time. The Bank's interest was acquired after fully complying with the conditions precedent to the remission or mitigation of forfeiture.

It is, therefore, Ordered, Adjudged and Decreed that the one 1955 Model Ford 2-Door Automobile, Motor Number U5AW–137562, be, and the same is hereby condemned and forfeited to the United States of America for the cause propounded in the Libel herein, and it is.

Further Ordered, Adjudged and Decreed that the United States Marshal for the Eastern District of North Carolina be authorized and empowered, and he is hereby directed, to sell said property at public auction, after due notice and advertisement as required by law, and that from the proceeds from said sale the said United States Marshal pay all expenses of seizure, storage charges and all fees in connection with the charges of said sale and the Court costs, not to include Attorney's Docket Fee, and after payment of said charges, fees, expenses and Court costs, pay to Security National Bank, Wilmington, North Carolina, the sum of $1,246.72, and after said sums are paid, pay any balance remaining thereof into the Treasury of the United States.

Amendment to Judgment.

The judgment heretofore entered in this cause is amended by adding to the close of such judgment the following:

The United States Marshal is further directed to sell the mechanics tools described in the libel and pay the proceeds into the Treasury of the United States.